Nicholson, C. J.,
delivered tRe opinion of the Court.
At the March Term, 1869, of the Criminal Court of Greene County, the following rule of Court was read in open Court, and ordered to be spread of record as an order of Court.
“ OkdeR OR Rule of Court.
“The subject matter of establishing a uniform rule of practice for the government of Attorneys practicing in the Criminal Court in the First Judicial Criminal District of Tennessee, under the Act of the General Assembly of the -State of Tennessee, passed on the 10th day of September, A. D., 1868, entitled ‘An Act to preserve the Public Peace/ being under consideration, the Court is pleased to order and direct, that it shall hereafter be an established and uniform rule of Court in the First Judicial Criminal District, that all attorneys proposing to practice in said Court, in any of the counties in said district, before being permitted to do so, shall, under oath, give satisfactory evidence that they are in no way associated obnoxious to the provisions of said Act of Assembly, passed on the 10th of September,- A. D., 1868, as required by said Act, as the same is construed and understood by the Court. The above rule shall be peremptory and uniform until such time as the same may be altered or modified by the Court. It is not made with a view to oppress, nor with a view of making invidious distinctions, but in compliance with, what is understood by the Court, to be a solemn duty, made so by the *249 provisions of said Act of Assembly. This January 12th, A. D., 1869 ”
Upon the entry of this rule of record, the Criminal Judge, A. "W. Howard, ordered the Clerk to destroy the old roll of attorneys, and make a new roll, and to enter the name of no attorney thereon who had not complied with the above rule. In obedience to this order, the names of the attorneys were stricken from the roll, in eluding the name of H. H. Ingersoll, the petitioner, who had been, for six months, a practicing attorney in said Court. Petitioner inquired of the Judge in open Court, if such was the order of the Court, whereupon the Judge ordered the Clerk to read said rule for the information of the attorneys present. Petitioner then stated to the Judge that he was not obnoxious to the provision of the Act of Assembly; and that he was opposed to the Ku-Klux Klan, and all other secret political organizations in existence in Tennessee, or in the United States; but, as the rule was a new one, and the oath extraordinary, he asked the privilege, in behalf of himself and brother attorneys, of being heard upon the same; but the privilege was “insultingly refused.” Petitioner then stated to the Court, in a respectful manner’, that as there was a wide difference of opinion upon the construction of said Act of Assembly, between the presiding Judge and all the other Judges of this section of the State, he wished an authoritative construction of the same from the Supreme Court-; and, in order to obtain it, asked the Judge to have a motion entered of record, that petitioner be permitted to practice without taking the oath prescribed in said order; and to *250 decide the same, that petitioner might have something from which to appeal to the Supreme Court. But this motion the Court refused to enter of record, and fined petitioner for contempt of Court, in making such a request, and peremptorily ordered him to take his seat, saying, that petitioner had no right as an attorney or a party, to be heard in that Court. Petitioner then procured another attorney, who was not under ban, to make the same motion for the same purpose, but the Judge peremptorily refused again to enter said motion of record, and threatened to fine said attorney for contempt, at the same time stating that he would not permit the correctness of that rule to be called into question, nor would he permit anything to go of record, from which an appeal could be taken. The attorney aforesaid, then stated that he would prepare a bill of exceptions to the action of his Honor, in refusing to allow the motion to be entered, but the Court replied that he would not sign any bill of exceptions to the action of the Court in the premises.
In April, 1869, the said H. H. Ingersoll presented his petition for a mandamus, to one of the Judges of the Supreme Court, in which the facts already cited were alleged, when the said petition was granted, and the said A. W. Howard required to appear and show cause why a peremptory mandamus should not issue, commanding him to have the proceedings complained of entered of record, to the end, that the same might be revised in- the Supreme Court.
On the day fixed, the said A. W. Howard, entered his appearance in the Supreme Court, and filed his answer, in which he states, at great length, his reasoh *251 for adopting the said rule, and for refusing to allow petitioner’s motions to be entered of record. He states that the “Act of the 10th of September, 1868, being, placed in respondent’s hands, ¿nd sworn, as respondent was, to administer the law faithfully, and finding in the 5th section of said Act, the following language, viz: “That it shall be the duty of all the Courts of this State, at every term, for two years, from and after the passage of this Act, to call before it all the officers thereof, who shall be sworn, and have this Act read or explained to them, and the Court shall ask said officers if they shall have any knowledge of any person in the State, or out of the State, that shall be guilty of any of the offenses contained in this Act,” etc. “Construing the 5th section of said Act, as including attornies as officers of the Court, in the meaning of the makers of the statute, he had no alternative left him, in the court of his own conscience, but to administer to them the oath, in connection with the officers of the Court,” and hence he adopted the rule already set out. The reason of the respondent for not allowing petitioner’s motions to be entered of record are stated as follows, viz: “that respondent did not regard the said Ingersoll as being associated in any way obnoxious to the Act of Septem'ber 10, 1868, and had to refer his motive in resisting the rule, to some other cause. And the conduct of Mr. Ingersoll warranted such conclusion. That he manifested a disposition to browbeat and override the Court, and bring its authority into contempt; believing this, respondent may have acted with some degree of promptness, which respondent might not, upon other oc *252 casions manifest, where due courtesy was shown. Respondent believed at the time, and still believes, it was an absolute duty to the bench, to inflict some degree of punishment upon Mr. Ingersoll, which respondent believed at the time, and still insists, was done in leniency and forbearance.”
As a further reason for not allowing petitioner’s motion to be entered of record, respondent says: “To say that all the rules of the Circuit, Chancery and Criminal Courts, made for their own protection, and for the dispatch of their own business, and made in accordance with the written law, are subject to revision in the Supreme Court, wherever any captious attorney sees proper to make a question upon the rules, and carry them up to the Supreme Court, is just to destroy the inherent powers of the inferior tribunals, and take from .them all their dignity, and all their rights of protecting themselves.”
After appearing and filing his answer to the alternative mandamus, Judge Howard, at the July Term, 1869, of the Criminal Court, at Greeneville, had a complete record of the proceedings, on Mr. Ingersoll’s motion, entered of record, including a bill of exceptions, and the granting of an appeal, of all which we have a transcript in this Court, under the improper caption of H. H. Ingersoll v. The Stale. This is the record, to procure which, Mr. Ingersoll filed his petition for a mandamus, and which would have been procured by a peremptory mandamus, if one had been ordered by this Court. Whilst, therefore, it is unnecessary for this Court to order a peremptory mandamus, we deem it proper to remark, that, upon *253 the petition and answer thereto, a case is presented which would have justified this Court in ordering a peremptory mandamus. If the Judge had been right in his construction of the Act of the 10th of September, 1868, and was authorized thereby, to adopt the rule as to attorneys, his refusal to hear a motion to allow Mr. Inger-soll to practice, without taking the prescribed oath, and to allow the motion to be entered of record, and to sign a bill of exceptions, were abuses of his judicial authority and derelictions of official duty, so palpable, that this Court could not have hesitated to interpose for the protection of the rights of Mr. Ingersoll, and for the correction "of the errors involved in this exercise of judicial functions. Nor are we able to discover the slightest legal excuse for his course in the reasons relied on by the Judge, in his answer to the alternative mandamus. If Mr. Ingersoll was guilty of violating any of the proprieties of an Attorney in his demeanor towards the Judge, (of which we have failed to discover the evidence,) it was competent for the Judge to protect the Court by inflicting punishment, but to undertake to prevent his* own official action from being reviewed and revised, upon appeal to a higher tribunal, by refusing to allow proper motions to be made or entered of record, and by refusing to give the benefit of exception to his rulings in bills of exceptions, was a mode of maintaining “the inherent powers of the inferior tribunals,” and of preserving “their dignity,” and of “protecting themselves,” altogether novel and unsupported by law. But as we have already remarked, a peremptory mandamus would now accomplish nothing, especially since the Criminal Court *254 of which the said Howard was the presiding Judge, has been abolished by statute; we therefore deem it unnecessary to make any further order, in the matter of the petition for mandamus.
Upon the record, setting forth the proceedings in the case, as made out and sent up, in answer to the alternative mandamus, we deem it proper to remark that we think the rule of Court, as applicable to the government of the attorneys in the Criminal Court, over which Judge Howard presided, was based upon a total misconstruction of the 5th section of the Act of September 1C, 1868. It is provided in that section, “that it shall be the duty of all the courts of this State, at every term, for two years, to call before them all the officers thereof, who shall be sworn, and have this Act read or explained to them.” Although, in one sense, an attorney is an officer of the court, yet, that he does not belong to the class of officers referred to in this section, is too clear to admit of discussion, or to require elucidation. The idea that the Legislature ever intended that the Judges should call before them, at any term, for two years, all the attorneys of their respective courts, and have the Acts of Assembly read or explained to them, and have them sworn to disclose, as common informers, all their knowledge as to persons, in or out of the State, who have been guilty of the offences in the Act commonly known as the Ku-klux law, is so palpably absurd, that it cannot be entertained for a moment. The language of the Act plainly indicates that it was intended by the Legislature to apply only to those persons who held offices, and who were subject to the or *255 ders of the Court, but not to attorneys, who hold no office, and who are not subject to the order of the Court, except in well-defined instances. See 2 Toml. Law Diet., title, Office, 685.
It appears from the record, that the petitioner was a regular practicing attorney in the First Criminal Circuit, and, as such, entitled, as a matter of right, to appear in the court for suitors, and to argue causes. As decided in the case of ex parte, Garland, 4 Wallace, 379, “this right was something more than a mere indulgence, revocable at the pleasure of the Court, or at the command of the Legislature. It is a right of which he can only be deprived by the judgment of the Court, for moral or professional delinquency.” And in the case of Champion v. The State, 3 Cold., 114, this Court says: “It appears from the records of the Court, the plaintiff in error had been admitted as a practicing lawyer in that court, and that he was a regular licensed attorney of this State; and having taken the oath required by law, as prescribed by section 3965, enrolled as an attorney; and the Judge, holding the Court had no right to impose other conditions than those embraced in section 3965.”
Holding, as we do, that the Legislature did not intend to subject attorneys to be called before the Judge and sworn as to their knowledge of offenders, under the Act of September 10, 1868, it follows, upon the foregoing authorities, that the Judge had no right to make or to enforce the rule aforesaid, against the petitioner. The relief prayed for by the petitioner is, therefore, granted; and the defendant, A. W. Howard, will pay the costs of this proceeding.